UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 7 |
| WILLIAM HENRY CUBBAGE, JR., | ) | Case No. 21-50377 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| JOHN P. FITZGERALD, III, Acting United | ) | |
| States Trustee for Region Four, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adversary Proceeding |
| *v.* | ) | Case No. 21-_____ |
| | ) | |
| GENERAL TOWING AND STORAGE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT OF THE UNITED STATES TRUSTEE FOR
INJUNCTIVE, MONETARY, AND OTHER RELIEF**

COMES now John P. Fitzgerald, III, Acting United States Trustee for Region Four (the "United States Trustee" or "Plaintiff"), by counsel, and moves the Court under sections 105(a), 362, and 521 of title 11 of the United States Code (the "Bankruptcy Code") to: (i) enjoin General Towing and Storage, LLC ("Towing"), whether directly, indirectly, or through any successors or assigns, from engaging in the scheme and constituent parts of the scheme described below (and as may be more particularly proven at trial, the "Scheme") by which Towing, among other things, abuses the bankruptcy system and willfully violates the automatic stay and induces debtors to violate their duties imposed by the Bankruptcy Code; (ii) monetarily sanction Towing in an amount not less than the profits earned by Towing through the operation of the Scheme; (iii) order Towing to return to Regional Acceptance Corporation ("Regional Acceptance") the $7,695.00 paid by it to protect its collateral (the Debtor's 2020 Dodge Charger being the

"Collateral") from the assertion by Towing of additional storage fees; and (iv) grant such other relief as the Court may determine is appropriate to, among other things, deter such misconduct. In support of this complaint, the United States Trustee respectfully states as follows:

### I.      *Jurisdiction and Venue*

1.      This adversary proceeding relates to the bankruptcy case of William Henry Cubbage, Jr. (the "Debtor"), case number 21-50377, which the Debtor commenced on July 13, 2021, by filing a voluntary petition for relief under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Virginia, Harrisonburg Division. The case remains pending before this Court.

2.      The Court has jurisdiction over this adversary proceeding.  28 U.S.C. §§ 157 and 1334.

3.      The Court has jurisdiction over Towing because, among other things, it took action to and did obtain possession of property of the Debtor's estate without obtaining relief from the stay.  Further, it took actions in this jurisdiction as more particularly described below.

4.      This complaint is based on 11 U.S.C. §§ 105, 307, 362, and 521.

5.      Venue is proper.  28 U.S.C. §§ 1408 and 1409.

6.      This is a core proceeding.  28 U.S.C. § 157(b)(2); *Budget Serv. Co. v. Better Homes*, 804 F.2d 289, 292 (4th Cir. 1986).

7.      The United States Trustee consents to the entry of final orders and judgment by this Court.

## II.    Background

### A.    The Parties

8.      Plaintiff United States Trustee is a Department of Justice official with standing to file this complaint under 11 U.S.C. § 307.

9.      Online records of the Maryland Department of Assessments & Taxation show that Towing (ID number W18863530) is a Maryland company that is currently not in good standing because it failed to file an annual report by April 15, 2021.  Available at https://egov.maryland.gov/BusinessExpress/EntitySearch/Business (last accessed October 27, 2021).

10.     Online records of the Virginia State Corporation Commission indicate that Towing is not authorized to transact business in Virginia.  Available at https://cis.scc.virginia.gov/EntitySearch/Index (last accessed October 27, 2021).

### B.    How Towing operates the Scheme generally.

11.     A solicitation letter, purportedly from Towing or some alias of Towing, is sent shortly after the petition date in certain debtors' cases offering to pay the debtors for possession of collateral, which collateral is property of the debtors' bankruptcy estates.

12.     If a debtor responds to a solicitation letter, Towing or some agent of Towing arranges for a tow truck to pick up the collateral.

13.     Relief from the stay is not sought by Towing prior to sending the solicitation letter or taking possession of the collateral.

14.     At the time Towing or its agent picks up the collateral, Towing or its agent has the debtor sign a contract authorizing Towing to charge certain towing and storage fees.

15.     Towing has the debtor sign the contract to, among other things, be able to assert mechanic's, garagemen's, or similar state law liens on collateral.

16.     After an opportunity for discovery, the evidence is expected to show that the creditors secured by the collateral are unaware of Towing's actions in sending the solicitation letters and taking possession of their collateral.

17.     After Towing has possession of the collateral, a letter is sent to the creditor whose loan is secured by the collateral.

18.     When the secured creditor contacts Towing, Towing demands the payment of unwarranted towing and storage fees in exchange for releasing the collateral to the secured creditor.

19.     After an opportunity for discovery, the evidence is expected to show that Towing tows and stores collateral to assert mechanic's, garagemen's, or similar state law liens[1] on the collateral to obtain payment of unwarranted fees.

**C.     *Towing's knowledge that its conduct, inter alia, violates the automatic stay.***

20.     After an opportunity for discovery, the evidence is expected to show that Towing is aware that the filing of a petition invokes the automatic stay.

21.     After an opportunity for discovery, the evidence is expected to show that Towing is aware that the automatic stay prohibits actions to, among other things, obtain possession of property of bankruptcy estates and create and perfect liens on property of bankruptcy estates.

22.     Towing has been sued before and damages sought for alleged violations of the automatic stay.[2]

---

[1] *See e.g.* Md. Code Ann., Commercial Law § 16-202(c)(1).
[2] For example, see Adversary Proceeding Case No. 20-09017 filed in the United States Bankruptcy Court for the for the Central District of Illinois.

**D.**     *Facts specific to this case.*

23.     In this case, the Debtor filed a voluntarily petition for relief on July 13, 2021.

24.     In response to question 3 of Official Form 106A/B, the Debtor disclosed his

interest in the Collateral as follows:

| 3.2 | Make: | **Dodge** | Who has an interest in the property? Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* | |
|---|---|---|---|---|---|
| | Model: | **Charger SXT** | ☑ Debtor 1 only | | |
| | Year: | **2020** | ☐ Debtor 2 only | **Current value of the entire property?** | **Current value of the portion you own?** |
| | Approximate mileage: | **14000** | ☐ Debtor 1 and Debtor 2 only | | |
| | Other information: | | ☐ At least one of the debtors and another | | |
| | | | ☐ Check if this is community property (see instructions) | $35,275.00 | $35,275.00 |

25.     On Official Form 106D, the Debtor disclosed, among other things, that Regional

Acceptance held an "Auto Lien" on the Collateral to secure an undisputed claim in the amount of

$33,725.00.

26.     At all times relevant to this complaint, Regional Acceptance's claim has been

secured by the Collateral.  A copy of the note and security agreement is attached as <u>Exhibit 1</u>.  A

copy of electronic titling information obtained from Regional Acceptance is attached as <u>Exhibit</u>

<u>2</u>.

27.     In the security agreement signed by the Debtor, the Debtor, among other things,

promised not to: "sell, rent, lease, or transfer any interest in the [Collateral] without our written

permission[;]" or "expose the vehicle to misuse, seizure, confiscation, or involuntary transfer."

<u>Exhibit 1</u> at pg. 2 sec. 2(b).

28.     The Debtor claimed a $1,550.00 exemption in relation to the Collateral; the

Debtor did not fully exempt the Collateral.

29.     On Official Form 108, the Debtor stated that he intended to retain the Collateral

and enter into a reaffirmation agreement (Docket No. 1 at pg. 40).

30.     After the petition date, Towing intentionally sent the letter attached as <u>Exhibit 3</u> to the Debtor (the "Solicitation Letter").  In the Solicitation Letter, Towing described "How it works" as follows:



The Solicitation Letter ended with, "**We are a repossession company.  We just do it differently.**"

31.     After an opportunity for discovery, the evidence is expected to show that at the time Towing sent the Solicitation Letter, Towing knew the Debtor had filed bankruptcy.

32.     After an opportunity for discovery, the evidence is expected to show that at the time Towing sent the Solicitation Letter, it knew that the Collateral was property of the Debtor's estate.

33.     After an opportunity for discovery, the evidence is expected to show that at the time Towing sent the Solicitation Letter, Towing knew that the filing of the Debtor's petition operated as a stay of, among other things, any act to obtain possession of the Collateral or create or perfect a lien on the Collateral.

34.     After receiving the Solicitation Letter, the Debtor called the phone number in the Solicitation Letter and agreed to let Towing take possession of the Collateral.

6

35.    Sometime on or prior to July 28, 2021, Towing or its agent met the Debtor, took possession of the Collateral, and gave the Debtor $1,000.00 as well as the "receipt" referenced in the Solicitation Letter.

36.    The "receipt" given to the Debtor in reality is a towing and storage contract, and a copy is attached as Exhibit 4 (the "Contract").

37.    After an opportunity for discovery, the evidence is expected to show that Towing intentionally enticed the Debtor to give possession of the Collateral to it and sign the Contract to, among other things, assert state law liens on the Collateral.

38.    After an opportunity for discovery, the evidence is expected to show that at the time Towing or its agent took possession of the Collateral, Towing knew the Collateral was property of the estate.

39.    On or about August 13, 2021, Towing intentionally sent Regional Acceptance the letter attached as Exhibit 5.

40.    After an opportunity for discovery, the evidence is expected to show that Towing intentionally did not notify Regional Acceptance it had taken possession of the Collateral until sufficient alleged towing and storage charges had accumulated to profit from taking possession of the Collateral.

41.    After an opportunity for discovery, the evidence is expected to show that at the time Towing sent Regional Acceptance the Demand Letter, Towing knew the Collateral was property of the estate.

42.    Through its agent which it reimbursed, Regional Acceptance paid Towing $7,695.00 on October 14, 2021.  A copy of a receipt issued by Towing is attached as Exhibit 6.

43.    With respect to the Collateral, at no time has Towing sought relief from the stay.

44.     After an opportunity for discovery, the evidence is expected to show that Towing:

has perpetrated the Scheme multiple times in multiple jurisdictions; and has, at a minimum,

willfully violated the automatic stay in this case.

## COUNT I – SANCTIONS UNDER 11 U.S.C. § 105

45.     The allegations set forth above are incorporated by reference as though set out

fully herein.

46.     The Bankruptcy Code provides this Court with the authority to:

> issue any order, process, or judgment that is necessary or appropriate to carry out
> the provisions of [the Bankruptcy Code]. No provision of [the Bankruptcy Code]
> providing for the raising of an issue by a party in interest shall be construed to
> preclude the court from, sua sponte, taking any action or making any
> determination necessary or appropriate to enforce or implement court orders or
> rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

47.     The filing of a petition operates as a stay applicable to all entities of, among other

acts,:

> (3) any act to obtain possession of property of the estate or of property from the
> estate or to exercise control over property of the estate; [and]
> (4) any act to create, perfect, or enforce any lien against property of the estate[.]

11 U.S.C. § 362(a)(3) & (4).

48.     The Bankruptcy Code imposes duties on individual debtors with respect to

collateral that is personal property and provides rights to creditors secured by such collateral.

The inclusion of these duties and rights demonstrates an intention by Congress to require debtors

to either pay creditors to retain the collateral or surrender the collateral to the creditor.  *See* 11

U.S.C. §§ 362(h), 521(a)(2) & (6), and 521(d).

49.    The United States Bankruptcy Court for the District of Massachusetts analyzed a bankruptcy court's authority to use 11 U.S.C. § 105(a) to address violations of the automatic stay as follows:

> A violation of the automatic stay, which is an injunction, may also be remedied by contempt process issued pursuant to the Court's authority under *11 U.S.C. § 105(a)*. Contempt was the only means for enforcing the automatic stay before *§ 362* was amended in 1984 to permit individuals also to proceed by motions for damages. By virtue of *11 U.S.C. § 105(a)*, a bankruptcy court has subject matter jurisdiction to employ civil contempt to enforce the automatic stay; though the stay is a statutory injunction, it is deemed to be an order of the court and enforceable as such by contempt.

*In re Sayeh*, 445 B.R. 19, 27-28 (Bankr. Mass. 2011) (internal citations and footnote omitted).

50.    Further, as stated by the United States Bankruptcy Court for the Southern District of New York:

> *Section 105(a) of the Bankruptcy Code* empowers a Court to correct an abuse of process and to do so *sua sponte*. 'Courts have used these provisions of *section 105* to resolve issues regarding the ability to detect and punish contempt, to regulate the practice of lawyers, to administer the assets under its control and the claims related to them and to monitor and supervise all bankruptcy estates.' 'While 'abuse of process' under *§ 105(a)* is not defined in the Bankruptcy Code, a few courts essentially define it as '**maneuvers or schemes which would have the effect of undermining the integrity of the bankruptcy system**.'

*In re Miszko*, 627 B.R. 809, 816 (Bankr. S.D.N.Y. 2021) (internal citations omitted) (emphasis added).

51.    After an opportunity for discovery, the evidence is expected to show that Towing is willfully abusing the bankruptcy system.

52.    After an opportunity for discovery, the evidence is expected to show that Towing is willfully violating the stay.

53.    After an opportunity for discovery, the evidence is expected to show that Towing is:

9

a.    knowingly and intentionally taking advantage of the period of time in which the secured creditors are stayed from seeking to obtain possession of their collateral;

b.    willfully violating the stay by soliciting debtors to give Towing possession of collateral that is property of debtors' estates;

c.    willfully violating the stay by taking possession of collateral that is property of the debtors' estates;

d.    willfully violating the stay by acting to create and perfect state law liens on collateral that is property of debtors' estates; and

e.    inducing debtors into violating their duties under the Bankruptcy Code and

their contractual obligations with lenders,[3] and potentially exposing them to risk of denial of

discharge[4] or denial of discharge of the creditor's debt.[5]

54.    Cause exists for the Court use its powers under 11 U.S.C. § 105(a) to end

Towing's abusive Scheme which, among other things, undermines the integrity of the

bankruptcy system.

---

[3] With regard to a similar towing and storage scheme, Judge Black noted:

In Virginia, it may also be a crime. Va. Code § 18.2-115 provides, in part, as follows: 'Whenever any person is in possession of any personal property, including motor vehicles or farm products, in any capacity, the title or ownership of which he has agreed in writing shall be or remain in another, or on which he has given a lien, and such person so in possession shall fraudulently sell, pledge, pawn or remove such property from the premises where it has been agreed that it shall remain, and refuse to disclose the location thereof, or otherwise dispose of the property or fraudulently remove the same from the Commonwealth, without the written consent of the owner or lienor or the person in whom the title is, or, if such writing be a deed of trust, without the written consent of the trustee or beneficiary in such deed of trust, he shall be deemed guilty of the larceny thereof.'

*Robbins v. Delafield et al*, 2018 Bankr. LEXIS 382 *78 n.68 (Bankr. W.D. Va. February 12, 2018).

[4] *See* 11 U.S.C. § 727(a)(2).

[5] *See* 11 U.S.C. § 523(a)(4).

WHEREFORE, the United States Trustee, by counsel, moves the Court to:

(i) enjoin Towing, whether directly, indirectly, or through any successors or assigns, from engaging in and continuing to operate the Scheme or any part of the Scheme including, by way of example and not in limitation, doing the following without relief from the stay: sending letters such as the Solicitation Letter to debtors; taking possession of property of bankruptcy estates; and taking actions to create and perfect liens on property of bankruptcy estates via contracts such as the Contract and then towing and storing property of bankruptcy estates;

(ii) monetarily sanction Towing in an amount not less than the profits earned by Towing through the operation of the Scheme; and

(iii) order Towing to return $7,695.00 to Regional Acceptance; and

(iv) grant such other relief as the Court may determine is appropriate to, among other things, deter such misconduct.

Date:  October 27, 2021                    Respectfully submitted,

United States Trustee

By: /s/ W. Joel Charboneau
Trial Attorney for the United States Trustee